UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-23715-BLOOM/Louis

FNU ISANTO, as Personal Representative of the
Estate of Fnu Pujiyoko, deceased,

  Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

  Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint, ECF No. [4] ("Motion"). Plaintiff filed a Response to the Motion, ECF No. [6] ("Response"), to which Defendant filed a Reply, ECF No. [9] ("Reply"). The Court has considered the Motion, the Response, the Reply, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

  **I. BACKGROUND**

This matter stems from a lawsuit Plaintiff initiated in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against Defendant on May 4, 2020, ECF No. [1]. Defendant removed the case to this Count on September 4, 2020, pursuant to 9 U.S.C. § 205 and 28 U.S.C. §§ 1331, 1333. *Id.* at 4-5.

According to the Complaint, ECF No. [1-5], Fnu Pujiyoko ("Decedent") was a seaman that worked aboard Defendant's *Symphony of the Seas* vessel (the "Vessel"). *Id.* at ¶¶ 10-11. Plaintiff

is Decedent's father and the personal representative of Decedent's estate. *Id.* at ¶ 2. Decedent's employment contract and/or Collective Bargaining Agreement ("CBA") had a projected end date of March 21, 2020; however, his employment terminated on or about March 13, 2020. *Id.* at ¶¶ 12-14. In light of the COVID-19 pandemic, on March 14, 2020, passengers aboard the Vessel were disembarked while Decedent and other crewmembers were permitted to roam about the Vessel without limitations or restrictions between March 14, 2020 and March 28, 2020. *Id.* at ¶¶ 15-16; *see also id.* at ¶ 39 (Defendant suspended all of its future cruises on March 13, 2020 and the Centers for Disease Control and Prevention issued a No Sail Order on March 14, 2020). During this time, crewmembers allegedly were "encouraged to attend parties, shows, events and activities that took place aboard the ship which required crewmembers to be in close proximity, crowded spaces and stand in long lines." *Id.* at ¶ 17. *See also id.* at ¶ 39 (alleging that after March 14, 2020, Defendant's "management continued to hold large in-person meetings amongst crew members and failed to implement social distancing requirements/guidelines aboard the vessel").

Beginning on March 23, 2020, while aboard the Vessel, Decedent began to suffer from worsening flu-like symptoms, and on March 30, 2020, Decedent was medically disembarked from the Vessel and transferred to Broward Health Medical Center. *Id.* at ¶¶ 18-19. He passed away on April 11, 2020. *Id.* at ¶ 22. *See also id.* at ¶¶ 23-27 (alleging Defendant's "careless and continuous failure to protect its crewmembers assigned to work aboard the vessels from COVID-19 – despite [Defendant] having prior notice pertaining to the dangerous conditions and/or explosive contagiousness associated with COVID-19 aboard its vessels").

The Complaint alleges that Defendant implemented a social distancing requirement aboard the Vessel on March 29, 2020, after Decedent became ill. *Id.* at ¶ 39. "At all times material[], Decedent was a crewmember who worked for Defendant aboard Defendant's vessel and who

contracted COVID-19 and/or was at a heightened risk of exposure while working aboard" the Vessel. *Id.* at ¶ 41. In Plaintiff's view, Decedent contracted the virus "as a result of Defendant's negligence and/or gross negligence and/or intentional conduct." *Id.* at ¶ 43. The Complaint alleges four counts: Jones Act wrongful death (Count I); unseaworthiness (Count II); failure to provide prompt, proper and adequate medical care (Count III); and failure to provide maintenance and cure (Count IV).

Defendant now moves to compel arbitration in accordance with the terms set forth in an arbitration provision in Decedent's "Sign-On Employment Agreement," ECF No. [4-1] at 4-5 ("SOEA"), and in the CBA, ECF No. [4-2] at 39-42 (collectively, "Employment Agreement"). In particular, the Employment Agreement provides that all grievances are to be resolved by arbitration under Bahamian law, as that is the law of the Vessel's Flag State:

> All grievances and any other dispute whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with the Seafarer's service for the Owners/Company under the present Agreement, including but not limited to claims for personal injury/disability or death, no matter how described, pleaded or styled, and whether asserted against the Owners/Company, Master, Employer, Ship Owner, vessel or vessel operator shall be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S., ("The Convention"), except as provided by any government mandated contract.
> . . .
> Subject to the exception noted in Section 4, the seat of any arbitration and the venue for the final hearing of any arbitration shall take place in the Flag State of the vessel, or in any location agreed by the Owners/Company and the Union or the representative of the Seafarer. The laws of the Flag State shall govern over any dispute in arbitration without regard to any Flag State conflict of law principles and the parties to this Agreement recognize that Flag State law will apply to all disputes, notwithstanding and without regard to any provision of Flag State law that may be construed to preclude the application of Flag State law to non-resident Seafarers.

SOEA at 4 ¶¶ 1, 3; CBA at 39-40 ¶¶ 1, 3.

The Employment Agreement, likewise, delegates certain authority to the arbitrator such

3

that:

> The arbitrator, not any federal, state or local court or agency shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this agreement is void or voidable and as to choice of law. The arbitrator shall also have the power to provide any remedies necessary to address the dispute such as, but not limited to, damages, specific performance, and injunctive relief.

SOEA at 5 ¶ 14; CBA at 42 ¶ 14.

According to Defendant, its records, which include a punch-in and punch-out time detail report, reflect that Decedent continued to work until March 23, 2020, and there is no indication that his employment had been terminated at any time before his medical sign-off on March 30, 2020. ECF No. [4] at 3 (citing ECF No. [4-4] at 9). In its view, Plaintiff's claims arise out of Decedent's employment and are subject to the arbitration terms of the Employment Agreement. *Id.* at 4.

Defendant makes five overarching points in support of compelling arbitration. First, federal law favors arbitration, particularly with respect to international commercial transactions. *Id.* at 4-5. Second, all conditions are met to compel arbitration under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which is implemented by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq. Id.* at 5-8. Third, the United States Court of Appeals for the Eleventh Circuit and district courts have consistently enforced seamen's arbitration agreements. Fourth, other courts have enforced arbitration agreements similar to the Employment Agreement at issue. *Id.* at 8-9. And fifth, Plaintiff's efforts to avoid arbitration by alleging that Decedent's employment terminated on March 13, 2020 and that the arbitration clause "expired" are unconvincing and contrary to the

record. *Id.* at 10.[1] Defendant, thus, requests the Court compel arbitration and dismiss the case.

Plaintiff responds that the matter should be remanded and that under the facts as alleged, there is no valid and binding arbitration clause at issue. ECF No. [6]. He makes six main arguments. First, the Court's review should be limited to the four corners of the Complaint and should not include a review of Defendant's time detail report. *Id.* at 3. Second, the case should be remanded because the Court lacks subject matter jurisdiction. *Id.* at 3-7. Third, there is no federal policy favoring arbitration if the applicability of the agreement itself is at issue. *Id.* at 7-8. Fourth, Defendant fails to cite binding law in this circuit, and the Eleventh Circuit authority Defendant cites is inapplicable. *Id.* at 8-9. Fifth, the Jones Act, 46 U.S.C. § 30104, prohibits removal of Jones Act claims to federal court. *Id.* at 10-13. Finally, the arbitration provision is unenforceable. *Id.* at 13-14.

Defendant replies that the issues Plaintiff raises in the Response are for the arbitrator to decide, not the Court, and that Plaintiff fails to show how the jurisdictional requirements under the Convention are not satisfied. ECF No. [9]. It makes five points. First, Plaintiff's objections to arbitration are for the arbitrator to decide. *Id.* at 2-3. Second, the broad language in the arbitration agreement shows that it is valid, enforceable, and intended to survive expiration. *Id.* at 3-6. Third, federal law gives this Court jurisdiction to enforce an international arbitration agreement. *Id.* at 6-7. Fourth, the Motion is founded on binding precedent, and Plaintiff's authorities are inapplicable. *Id.* at 7-8. Finally, arbitration agreements are enforceable so long as the remedies available are fundamentally fair, and the instant arbitration agreement is enforceable. *Id.* at 8-10.

---

[1] The Complaint alleges that "[j]ust shy of the projected end date for Decedent's last employment contract, or about March 13, 2020, RCCL terminated Decedent's contract. Therefore, no arbitration provision in Decedent's employment contract and/or CBA is applicable because Decedent's contract had expired." ECF No. [1-5] at 6 ¶ 13.

The Motion, accordingly, is ripe for consideration.

## II. LEGAL STANDARD

### A. Motion to dismiss

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual

allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### B.     Motion to compel arbitration under the Convention

The Convention requires courts of signatory nations, such as the United States, to give effect to private arbitration agreements and to enforce arbitral awards made in signatory nations. United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. I(1), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3; *see also Sierra v. Cruise Ships Catering & Servs. Int'l, N.V.*, 631 F. App'x 714, 715-16 (11th Cir. 2015). The United States enforces its agreement to the Convention's terms through Chapter 2 of the FAA. *See* 9 U.S.C. §§ 201-208.

In ruling on a motion to enforce an arbitration agreement under the Convention, a district court conducts a "very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (quoting *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002)). As a threshold matter, "[u]nder both the FAA and the Convention 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate' it." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 n.9 (11th Cir. 2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). In other words, "the parties

will not be required to arbitrate when they have not agreed to do so." *Id.* at 1214 (quoting *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419 (11th Cir. 1990)).

Beyond that threshold consideration, an arbitration agreement is governed by the Convention if four jurisdictional prerequisites are met: (1) the agreement is "in writing within the meaning of the Convention;" (2) "the agreement provides for arbitration in the territory of a signatory of the Convention" (3) "the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial;" and (4) one of the parties to the agreement is not an American citizen. *Bautista*, 396 F.3d at 1294 n.7. If the agreement satisfies those jurisdictional prerequisites, the district court must order arbitration unless any of the Convention's affirmative defenses apply. *Id.* at 1294-95. "That is, arbitration is mandatory unless the plaintiff proves that the agreement is 'null and void, inoperative or incapable of being enforced.'" *Azevedo v. Carnival Corp.*, No. 08-CIV-20518, 2008 WL 2261195, at *3 (S.D. Fla. May 30, 2008) (citation omitted).

Moreover, "[t]he party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1324 (S.D. Fla. 2004). "This burden is not unlike that of a party seeking summary judgment," and therefore "the party opposing arbitration should identify those portions of the pleadings, depositions, answers to interrogatories, and affidavits which support its contention." *Id.* "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also*

*Bautista*, 396 F.3d at 1295 ("the Convention Act 'generally establishes a strong presumption in favor of arbitration of international commercial disputes'") (citation omitted).

Through these lenses, the Court considers the Motion and the parties' arguments.

### III.   DISCUSSION

Deciding whether Defendant is entitled to the relief it requests raises four overarching issues. First, whether the Decedent's time detail report should be considered in analyzing whether the parties agreed to arbitrate the underlying disputes in this case. Second, whether the Court has federal jurisdiction over this action. If so, third, whether the four jurisdictional requirements of the Convention have been satisfied and if one of the Convention's affirmative defenses applies. Finally, if the Court compels arbitration, whether the case should be stayed or dismissed. The Court will address each issue in turn.

#### A.   The Court will not consider Decedent's time detail report

Defendant removed the case to this Court on September 4, 2020, pursuant to 9 U.S.C. § 202 *et al.* (the Convention) and 28 U.S.C. §§ 1331 (federal question), 1333 (admiralty and maritime jurisdiction). ECF No. [1] at ¶¶ 11-16. Although Plaintiff does not argue that removal was untimely,[2] he maintains that the Court should not consider Defendant's time detail report, the Court lacks jurisdiction because the arbitration provision contained in the Employment Agreement is invalid, and the arbitration agreement does not extend beyond termination. ECF No. [6] at 3-7.

As an initial matter, although Plaintiff maintains that under the "well pled facts, there is no valid, binding arbitration clause at issue," *id.* at 1, the Complaint itself does not clearly allege that the arbitration clause is inapplicable. In particular, the Complaint alleges that Decedent was

---

[2] Under 9 U.S.C. § 205, a defendant may remove an action "at any time before the trial thereof," where "the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention[.]" *Id.*

terminated on March 13, 2020 before the projected end of the employment relationship and hence the Employment Agreement's arbitration clause does not apply, ECF No. [1-5] at ¶ 13. However, the Complaint also alleges that Decedent contracted COVID-19 "while working" aboard the Vessel, *id.* at ¶ 11, and that at "all times material" Decedent was a crewmember who "worked" for Defendant and contracted COVID-19 "while working" on the Vessel, *id.* at ¶¶ 41-42. *See also id.* at ¶¶ 44-45 (alleging that Defendant failed to provide Decedent with a reasonably safe place to work aboard the Vessel). Thus, the Complaint does not uniformly set forth allegations that bar the potential application of the arbitration agreement.

Nonetheless, Defendant does not seek to compel arbitration on the ground that the Complaint's allegations themselves are internally inconsistent. In fact, it argues that "arbitration should still be compelled even if [D]ecedent's contract was terminated as factiously alleged." ECF No. [9] at 6. Instead, Defendant asserts that the Court should examine extrinsic materials, particularly Decedent's time detail report, ECF No. [4-4], because Plaintiff's allegations that Decedent's employment was terminated is "wholly unfounded, contrary to the record evidence and solely advanced to avoid the mandatory arbitration provision of the Employment Agreement." ECF No. [4] at 10. Defendant likewise argues that the Complaint's allegations regarding Decedent's termination are conclusory and factually bare. ECF No. [9] at 5-6. Accordingly, the first issue the Court must assess is whether to consider Decedent's purported time detail report, which was not part of the Complaint but instead was attached to the Motion.

Plaintiff challenges that the Court cannot look beyond the four corners of the Complaint, ECF No. [6] at 3, and must accept the Complaint's allegations as true. However, as Defendant correctly notes, courts can consider extrinsic documents not attached to the complaint where the document is central to the plaintiff's claim and is undisputed. ECF No. [9] at 6 (citing *Horsley*,

10

304 F.3d at 1134 ("[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. 'Undisputed' in this context means that the authenticity of the document is not challenged.") (internal citation omitted)); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.") (citation omitted).

Here, Plaintiff has not challenged the authenticity of the Employment Agreement and refers to it in the Complaint. See ECF No. [1-5] ¶ 12. In contrast, Plaintiff *does* contest Decedent's time detail report, ECF No. [4-4], and, as such, it will not be considered. *See Roberts v. Carnival Corp.*, No. 19-14993, 2020 WL 4931653, at *1-2 (11th Cir. Aug. 24, 2020) (vacating dismissal order where the lower court erred in considering materials outside the complaint).

### B.     The parties agreed to arbitrate arbitrability

"Under both the FAA and the Convention, 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate' it." *Doe*, 657 F.3d at 1213 n.9. In determining the scope of an agreement, the Court must "look first to whether the parties agreed to arbitrate a dispute" rather than to general policy goals. *Id.* at 1214. Courts are "not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Id.* (citation omitted). That means "the parties will not be required to arbitrate when they have not agreed to do so," because arbitration "is a matter of consent, not coercion." *Id.* (citation omitted). Simply put, "[b]ecause arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties." *Klay v. All Defendants*, 389

11

F.3d 1191, 1203 (11th Cir. 2004) (citing *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1358 (11th Cir. 2002) ("We will compel no arbitration of issues that are outside an agreement to arbitrate.")).

Even if the Court were to overlook the Complaint's pleading issues and construe Plaintiff's allegations in a light most favorable to him such that Decedent's employment was terminated on March 13, 2020, the matter would still be subject to arbitration. Under the Employment Agreement, gateway issues of arbitrability, including the applicability and enforceability of the arbitration agreement, are for the arbitrator to decide:

> The arbitrator, not any federal, state or local court or agency shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this agreement is void or voidable and as to choice of law. The arbitrator shall also have the power to provide any remedies necessary to address the dispute such as, but not limited to, damages, specific performance, and injunctive relief.

SOEA at 5 ¶ 14; CBA at 42 ¶ 14.

Under this broad language, the Court finds that the parties agreed to arbitrate their underlying disputes. A court "may conclude that the parties agreed to arbitrate the very issue of 'arbitrability' where 'there is clear and unmistakable evidence that they did so.'" *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014).[3] *Martinez* is instructive. In that case, a seaman that sustained a back injury while working on the ship brought an action in state court,

---

[3] Plaintiff's citation to *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) for the proposition that only the Court, and not the arbitrator, can decide whether the parties agreed to arbitrate their disputes is unavailing. That case does not involve arbitration under the Convention or a dispute arising from a cruise ship setting, and the United States Supreme Court found "no need to apply the rule requiring 'clear and unmistakable' evidence of an agreement to arbitrate arbitrability" because "neither party argues that the arbitrator should decide this question[.]" *Id.* at 297 n.5. Further, the Supreme Court explained that parties can "specifically commit[] . . . disputes to an arbitrator" regarding enforceability or applicability of the arbitration agreement. *Id.* at 299.

later removed to federal court, asserting claims for Jones Act negligence, unseaworthiness, and failure to provide adequate maintenance and cure. *Id.* at 1243. His employment agreement, similar to the Agreement here, contained an arbitration clause stating that except for wage disputes, "any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration." *Id.* The district court granted a motion to compel arbitration pursuant to the Convention, which prompted the appeal. *Id.* at 1242.

On appeal, the seaman argued that the lower court erred in compelling arbitration because the employment agreement had terminated before the dispute arose. *Id.* at 1245. Like here, the agreement's arbitration clause did not expressly state whether it survived termination, but the Eleventh Circuit noted that the arbitration agreement's terms "suggest[] viability" such that "the parties contemplated some circumstances in which the arbitration clause would survive the termination of the Seafarer's Agreement." *Id.* at 1245-46. The panel, accordingly, affirmed the district court's order and determined that the dispute about whether the contract had terminated was properly for the arbitrator, and not the court, to decide.

> "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Thus, a court may conclude that the parties agreed to arbitrate the very issue of "arbitrability" where "there is clear and unmistakable evidence that they did so." Because parties can agree to arbitrate the very question of arbitrabililty, they can also agree to arbitrate disputes about contract termination. In this case, the district court did not err in refusing to determine whether the Agreement had terminated because the question of termination has remained in dispute and the "clear and unmistakable" language of the contract indicates that the parties intended for just such a dispute to be decided by arbitration and not the court.

*Id.* at 1246 (internal citations omitted).

Here, like the arbitration agreement in *Martinez*, there is "clear and unmistakable" language in the Employment Agreement's arbitration provisions that disputes related to gateway

issues, such as whether the arbitration provision even applies, are for the arbitrator to decide. *See* SOEA at 5 ¶ 14; CBA at 42 ¶ 14. Notably, other courts have determined that disputes under similar broadly-worded arbitration agreements are subject to arbitration even though the plaintiffs, like Plaintiff here, argued that the employment agreement had terminated and thus the arbitration clauses did not apply. *See Montero v. Carnival Corp.*, 523 F. App'x 623, 627 (11th Cir. 2013) (rejecting argument that "arbitration is not required if an employee brings a claim after the employment contract terminates" because it "would contradict the arbitration clause's broad language, as well as the Convention's policy in favor of arbitration," and compelling arbitration where agreement required arbitration of "any and all disputes arising out of . . . Seafarer's service on the vessel"); *Bendlis v. NCL (Bahamas), Ltd.*, 112 F. Supp. 3d 1339, 1345-46 (S.D. Fla. 2015) (explaining that arbitration clause stating that "any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seaman's shipboard employment with the Company . . . shall be referred to and resolved exclusively by binding arbitration" is "broad language" that "suggests" the parties "intended for the arbitration clause to survive expiration").

Plaintiff does not present grounds for why the instant arbitration agreement, which contains similarly worded and broad language, should be treated differently so as to not subject Plaintiff's claims to arbitration. In fact, the Response fails to address the Employment Agreement's delegation provision altogether. Instead, it concentrates on the allegation that Decedent was terminated on March 13, 2020, and thus the Employment Agreement cannot apply. This allegation, however, is not dispositive of whether the action is subject to arbitration. And, as noted, the Complaint's allegations themselves do not clearly demonstrate that Decedent was terminated at the time that he contracted COVID-19, which alone displaces Plaintiff's unadorned allegation that

the arbitration provision is inapplicable because the employment contract had "expired" when Decedent's employment was terminated. ECF No. [1-5] at 6 ¶¶ 13-14. Accordingly, the Court concludes that the first *Bautista* prong is satisfied. Because Plaintiff does not contest the remaining three prongs of *Bautista*, which the Court likewise concludes are present, Defendant has demonstrated the four conditions to compel arbitration are satisfied. Defendant therefore has carried its initial burden to show that an agreement to arbitrate is subject to the Convention. Thus, unless one of the Convention's limited affirmative defenses applies, the Court must compel arbitration of the claims at issue.

### C. Plaintiff's defenses are inapplicable

To implement the Convention, the "Convention Act provides two causes of action in federal court for a party seeking to enforce arbitration agreements covered by the New York Convention: (1) an action to compel arbitration in accord with the terms of the agreement, 9 U.S.C. § 206, and (2) at a later stage, an action to confirm an arbitral award made pursuant to an arbitration agreement, 9 U.S.C. § 207." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1286 (11th Cir. 2015) (emphasis removed). "These two stages of enforcement are known as (1) the arbitration-enforcement stage and (2) the award-enforcement stage. Only certain defenses can be raised at each stage of enforcement, and the available defenses differ between the arbitration-enforcement stage and the award-enforcement stage." *Id.* (internal citation omitted). At the present arbitration-enforcement stage, the "only" defenses to arbitration are that the arbitration agreement is "null and void, inoperative or incapable of being performed." *Id.* "The null-and-void clause encompasses only those defenses grounded in standard breach-of-contract defenses—such as fraud, mistake, duress, and waiver—that can be applied neutrally before international tribunals."

*Id.* Defenses that the arbitration agreement is unconscionable or that public policy defeats the agreement are premature and not available at this setting. *Id.* at 1287-88.

Plaintiff does not characterize his affirmative defenses under the labels above, but instead argues that the arbitration agreement is inapplicable because Decedent was terminated before the projected employment end date expired, the Employment Agreement does not survive termination, and the Court, not the arbitrator, must decide whether the arbitration agreement applies. ECF No. [6] at 4-8. As explained above, these "defenses" do not bar arbitration here. Plaintiff also argues that the Court lacks subject matter jurisdiction, the arbitration agreement fails to provide relief equivalent to statutory remedies, and it is thus unenforceable. *Id.* at 3-4, 8-14. Upon review, the Court does not find that these "defenses" preclude enforcing the arbitration agreement in this case.

Regarding Plaintiff's argument that the Court lacks jurisdiction, *id.* at 10-13, the Court is unconvinced. Contrary to Plaintiff's claim that removal was improper because Jones Act claims cannot be removed as a matter of law, *id.* at 10, "Eleventh Circuit precedent establishes that a seaman's Jones Act claim covered by an arbitration clause falling under the Convention may be removed to federal court pursuant to 9 U.S.C. § 205." *Bendlis*, 112 F. Supp. 3d at 1347 (collecting cases). Indeed, this Court has previously accepted removal and compelled Jones Act claims to arbitration pursuant to the Convention. *See Wexler v. Solemates Marine, Ltd.*, No. 16-CV-62704, 2017 WL 979212, at *6-7 (S.D. Fla. Mar. 14, 2017). Further, while Plaintiff challenges that the Jones Act incorporates a prohibition on removal by way of the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, ECF No. [6] at 11, as Defendant notes, the Eleventh Circuit has previously rejected the argument that the FELA prohibits the removal and arbitration of Jones Act claims. *See Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1287 (11th Cir. 2011) ("The repeal of the Jones Act's venue provision hardly warrants the inference that Congress sought to overturn the

numerous cases requiring arbitration of Jones Act claims where the Convention applies. . . . If Congress had intended to render international arbitration clauses unenforceable in Jones Act cases, it could have explicitly done so. . . . Because we conclude that Congress intended no subject-matter exception to enforceability for Jones Act claims, [appellant's] argument fails and the arbitration clause in his Contract must be enforced.").

Moreover, to the extent Plaintiff asserts that the Jones Act "controls over" the Convention, ECF No. [6] at 12-13, thus precluding removal, the Court finds this argument lacking in merit. Plaintiff's argument is inconsistent with Eleventh Circuit case law that expressly approves of removing Jones Act claims under the Convention. *See, e.g.*, *Trifonov v. MSC Mediterranean Shipping Co. SA*, 590 F. App'x 842, 845 (11th Cir. 2014) (affirming order compelling arbitration and determining that Jones Act claim was "removed properly to federal court," and explaining that "[b]ut that Jones Act claims may be subjected to arbitration under the Convention is clear. . . . Although we have not addressed the removal issue expressly, this Court has routinely compelled arbitration of Jones Act claims that had been removed under 9 U.S.C. § 205 when they relate to an arbitration agreement under the Convention. And the few other courts that have decided the issue have concluded that removal of Jones Act claims is proper under the Convention.") (internal citations omitted). Accordingly, the Convention "controls over" the Jones Act for removal purposes. Because Plaintiff fails to show how any of the Complaint's claims do not invoke this Court's subject matter jurisdiction, Plaintiff's jurisdictional arguments are rejected.

The Court is similarly unconvinced by Plaintiff's next argument that (i) the arbitration agreement is void and unenforceable under *Thomas v. Carnival*, 573 F.3d 1113 (11th Cir. 2009);[4]

---

[4] In *Thomas,* the Eleventh Circuit held that an arbitration clause that required a seaman to arbitrate his Seaman's Wage Act claim in the Philippines under Panamanian law was void as against public policy because the choice-of-law and choice-of-forum clauses worked in tandem to operate as a

(ii) *Lindo*, 652 F.3d 1257 did not overturn *Thomas* and "does not control this case;" and (iii) the arbitration agreement deprives him of "any meaningful relief" and is thus invalid. ECF No. [6] at 8-9, 13-14.

First, contrary to Plaintiff's claims, *Thomas* is not the "binding law of this circuit." The Eleventh Circuit has repeatedly determined that *Thomas* "violate[d] *Bautista* and [the] prior panel precedent rule," *Lindo*, 652 F.3d at 1278, and consequently does not reflect controlling law. *See, e.g.*, *Brown v. Royal Caribbean Cruises, Ltd.*, 549 F. App'x 861, 863-64 (11th Cir. 2013) (noting that "[t]his court has since confirmed *Lindo*'s holding multiple times" and that reliance on *Thomas* to support a public policy argument is "unavailing") (collecting cases). Indeed, the Eleventh Circuit put it bluntly: "let there be no doubt: To the extent that *Thomas* and *Lindo* are arguably at odds, *Lindo* controls." *Escobar*, 805 F.3d at 1290. The *Escobar* panel, moreover, explicitly characterized *Lindo* as "binding precedent and remains good law." *Id.* Accordingly, Plaintiff's argument concerning *Thomas* and *Lindo* is unfounded.

Second, Plaintiff's argument that the arbitration agreement is unenforceable because it does not provide him with any meaningful relief, ECF No. [6] at 13-14, is not a valid defense at this stage and is, thus, premature. *See Lindo*, 652 F.3d at 1279 ("at the arbitration-enforcement stage, it is generally premature to make findings about how arbitrators will conduct the arbitral process, whether a claim will be heard, or whether the foreign-law remedies will be adequate or inadequate."); *Escobar*, 805 F.3d at 1288-90 (concluding that public policy argument based on foreign choice of law clause was "premature at th[e] arbitration-enforcement stage," and that such

---

prospective waiver of the seaman's right to pursue his statutory remedies under U.S. law. 573 F.3d at 1123-24. In so holding, the Eleventh Circuit stated that arbitration clauses should be upheld only if it evident that (1) U.S. law definitely will be applied, or (2) there is a possibility that U.S. law will be applied *and* there will be a subsequent opportunity for review. *Id.* at 1123.

argument "must wait" until the "award-enforcement stage" after the arbitrator rules); *Henriquez v. NCL (Bahamas), Ltd.*, 440 F. App'x 714, 716 (11th Cir. 2011) ("Henriquez cannot avail himself of the public policy defense at this stage. As we held in *Lindo,* only *after* arbitration may a court 'refuse to enforce an arbitral award if the award is contrary to the public policy of the country.'") (emphasis in original).

Accordingly, because Plaintiff fails to demonstrate that a valid affirmative defense bars arbitration at this stage, the Court concludes that this lawsuit shall be submitted to binding arbitration in accordance with the arbitration clauses in the Employment Agreement.

### D. Staying the case is proper

Having determined that arbitration is required, the Court now turns to whether the case should be dismissed or stayed. Defendant requests that the Court dismiss this action. ECF No. [4] at 9. Although "courts in this district have taken both approaches," *Treto*, 2017 WL 7732870, at *5, this Court has previously stayed proceedings rather than dismissed the action after having granted a motion to compel arbitration. *See VVG Real Estate Invs. v. Underwriters at Lloyd's, London*, 317 F. Supp. 3d 1199, 1207 (S.D. Fla. 2018) ("Although Defendant moves to dismiss and, in the alternative, stay this action, '[t]he Eleventh Circuit has held that the proper course is to stay the proceedings rather than dismiss the action.' *Norfolk S. Ry. Co. v. Fla. E. Coast Ry., LLC*, No. 3:13-CV-576-J-34JRK, 2014 WL 757942, at *11 (M.D. Fla. Feb. 26, 2014) ((citing *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim that is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."))). Accordingly, this Court will stay the proceedings.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

Case No. 20-cv-23715-BLOOM/Louis

1. The Motion, **ECF No. [4]**, is **GRANTED IN PART AND DENIED IN PART**.

    The Motion is granted to the extent that:

    a. The parties shall **SUBMIT** to arbitration all claims asserted in this matter in accordance with the arbitration agreement in the SOEA and the CBA.

    b. The case is **STAYED** pending completion of the arbitration proceedings.

    c. After arbitration has concluded, the parties shall **FILE** a notice with the Court advising whether the case shall be reopened or dismissed.

2. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT**, and any pending deadlines are **TERMINATED**.

3. The Clerk of Court is directed to **CLOSE** this matter for administrative purposes.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 23, 2020.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record